# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA**

    v.

**JOSE A. RAMOS-ROMERO,**
    Defendant.

Criminal No. 3-cr-55-3 (ADC)

## REPORT AND RECOMMENDATION

On April 8, 2005, Defendant Jose A. Ramos-Romero ("Ramos-Romero") was convicted of one count of conspiracy to possess with intent to distribute and to distribute at least five kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 851, and one count of illegal possession of firearms in furtherance of a drug trafficking offense in violation of 18 U.S.C. §§ 924(c)(1) and (2). Docket No. ("Dkt.") 496, 497. This court sentenced him to a total of 425 months' imprisonment for his offenses. Dkt. 497 at 2. His release date is projected to be June 26, 2038. Dkt. 1729-1 at 1. Before the court is his motion for a reduced sentence pursuant to Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222 (the "First Step Act"). Dkt. 1729. The government failed to respond to the motion after they were requested to do so. *See* Dkt. 1731. This matter was referred to me for a report and recommendation. Dkt. 1730. For the following reasons, I recommend that the court **DENY** Ramos-Romero's motion for reduced sentence.

## BACKGROUND

Ramos-Romero was born on August 21, 1972 and is 52 years old. Dkt. 492 at 2. From around January 2001 to October 2002, he was a member of a drug trafficking organization based in the Luis Lloréns Torres Public Housing Project in San Juan, Puerto Rico. *Id*. at 3. He served the organization as an enforcer, and in that role, brandished firearms to protect the interests of the

organization. *Id*. He also distributed illegal drugs from the Las Malvinas drug point within the housing project. *Id*. The drug point sold at least five kilograms of cocaine during the conspiracy. *Id*.

Ramos-Romero was arrested on February 19, 2003. *Id*. at 1. Following a jury trial held in July 2004, he was found guilty of conspiracy to distribute cocaine and of illegal possession of firearms. Dkt. 347. He was sentenced to 365 months on his drug distribution count and 60 months on his firearms count, to be served consecutively for a total of 425 months' imprisonment. Dkt. 497. This sentence reflected his total offense level of 37 and criminal history category of VI, both of which include increases due to his status as a career offender. Dkt. 492 at 9. He is currently incarcerated at HAF Hazelton FCI in Preston County, West Virginia, a medium-security prison. Dkt. 1729-1 at 2.

The current motion for reduced sentence pursuant to the First Step Act is Ramos-Romero's second – he previously sought a reduced sentence in March 2023. Dkt. 1703. The government opposed that motion, arguing that he was ineligible since his convictions were not covered under the First Step Act. Dkt. 1719. The motion was denied by presiding District Judge Aida M. Delgado-Colon on August 2, 2024.[1] Dkt. 1727.

## DISCUSSION

There are two parts to evaluating a motion to reduce sentence pursuant to Section 404 of the First Step Act. First, the defendant must be eligible for a reduction by virtue of having been convicted of a "covered offense." Second, the court considers the statutory sentencing factors in 18 U.S.C. § 3553 and determines whether they weigh for or against a sentence reduction. *See, e.g.*, *United States v. Rodriguez-Velez*, Crim. No. 5-140-3 (RAM), 2024 U.S. Dist. LEXIS 79941, at *4-5 (D.P.R. Apr. 29, 2024).

---

[1] This case was assigned to Judge Delgado-Colon in January 2018 after Judge Salvador E. Casellas, who had presided during trial and sentencing, passed away. *See* Dkt. 1669.

**A. Covered Offense**

The Fair Sentencing Act of 2010 attempted to address inequities in sentencing between powder and crack cocaine offenses by raising the threshold quantities of crack cocaine triggering mandatory minimum sentences. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010) (the "Fair Sentencing Act"); *United States v. Pierre*, 372 F. Supp. 3d 17, 19-20 (D.R.I. 2019). Section 2 of the Fair Sentencing Act raised the amount of crack cocaine required to trigger a five-year mandatory minimum from 5 grams to 28 grams, and the amount required to trigger a ten-year mandatory minimum from 50 grams to 280 grams. Fair Sentencing Act § 2(a). Section 3 eliminated the mandatory minimum sentence for simple possession of crack cocaine. *Id*. § 3. While the Fair Sentencing Act did not apply retroactively, the First Step Act provided convicted defendants a chance to seek a retroactively reduced sentence. "A court that imposed a sentence for a covered offense may, on motion of the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b). A "covered offense" means "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the [Fair Sentencing Act], that was committed before August 3, 2010." *Id*. § 404(a). The Fair Sentencing Act did not change the penalty for distributing five or more kilograms of powder cocaine. *United States v. Luna*, 436 F. Supp. 3d 478, 482 (D. Conn. 2020).

Ramos-Romero was found guilty of conspiracy to distribute cocaine under 21 U.S.C. § 846. "Section 846 provides that a person found guilty of conspiracy to distribute cocaine shall be subject to the penalties for the offense that was the subject of the conspiracy." *United States v. Gonzalez-Velez*, 466 F.3d 27, 41 (1st Cir. 2006). The subject offense as found by the jury was distribution of five or more kilograms of cocaine – powder cocaine, not crack cocaine. *See* Dkt.

347 at 2; Dkt. 492 at 4-5 (outlining Ramos-Romero's offense level by reference to the offense involving at least five but less than fifteen kilograms of cocaine). Thus, the mandatory minimum sentence for his offense was determined by reference to 21 U.S.C. § 841(b)(1)(A)(ii)(II), which was not amended by the Fair Sentencing Act.

The main question in evaluating Ramos-Romero's eligibility for a reduction is whether his offense qualifies as a "covered offense" under the First Step Act despite not involving crack cocaine. Ramos-Romero asserts that it does. Relying on *United States v. Smith*, 954 F.3d 446 (1st Cir. 2020), he argues that his offense of conviction was conspiracy to violate 21 U.S.C. § 841(a). Since Sections 2 or 3 of the Fair Sentencing Act made changes to Section 841's penalty clauses (found in § 841(b)), he claims that his offense is covered under a literal interpretation of the First Step Act, even though the penalty clause he was sentenced under was not amended. He also asserts that the court should "not delve into the particulars of the record to determine how the defendant committed said offense" when evaluating eligibility for a sentence reduction under Section 404. Dkt. 1729 at 5.

In *Smith*, the First Circuit considered the case of a defendant who sought to reduce his sentence for distributing a small amount of crack cocaine. *Smith*, 954 F.3d at 446. Since defendant Smith did not meet the amount thresholds in Sections 841(b)(1)(A) or 841(b)(1)(B), his sentence was determined by reference to the fallback clause 841(b)(1)(C), which was not itself amended by the Fair Sentencing Act. *Id*. at 447. Nevertheless, the court determined that Smith's offense was covered. The court found that the "Federal criminal statute" which was "modified by Section 2 of the Fair Sentencing Act" was the entire Section 841, rather than the specific penalty provisions that were modified. *Id*. at 449-450. Since Smith was convicted of an offense under Section 841(a), his offense was covered, even though the sentence he received was not based on one of the

modified penalty clauses. *Id*. Alternatively, the court more narrowly reasoned that Section 841(b)(1)(C) was "modified by" the Fair Sentencing Act. *Id*. at 450. By raising the mandatory minimum threshold quantities for crack cocaine offenses, the Fair Sentencing Act also modified the scope of the 841(b)(1)(C) fallback, even though the text of the latter was not itself modified. *Id*. The court noted that "the statutory benchmarks likely have an anchoring effect on a sentencing judge's decision making" even if the threshold did not apply. *Id*. ("Under the old version of § 841, 1.69 grams of crack was 34% of a quantity mandating a five-year minimum. Now it is only 6% of that threshold."). The court specifically noted that whether "a violation of § 841(a)(1) involving only a controlled substance other than crack cocaine (heroin, for example) would also be considered a covered offense" presented "[a] more difficult question" that did not need to be considered "[s]ince Smith was convicted for distributing crack cocaine." *Id*. at 450 n. 4.

I find that Ramos-Romero's powder cocaine conviction is not covered under the First Step Act. While the reasoning in *Smith* arguably supports Ramos-Romero's contention that his offense is covered (since, like Smith, he was convicted under Section 841(a)), the court in *Smith* specifically declined to decide whether non-crack convictions are covered offenses. And other circuit courts have resoundingly asserted that they are not. *See, e.g.*, *United States v. Young*, 998 F.3d 43, 54 n. 3 (2d Cir. 2021) (finding the defendant's interpretation of the First Step Act flawed because "it would permit any defendant convicted of violating Section 841(a) to seek resentencing under the First Step Act even if the defendant were not convicted of a crack-related offense"); *United States v. Birt*, 966 F.3d 257, 263 (3d Cir. 2020) (same); *United States v. Jones*, 962 F.3d 1290, 1299-1300 (11th Cir. 2020) (same) (vacated on other grounds by *Jackson v. United States*, 143 S. Ct. 72 (2022)). More specifically, district courts in other circuits have found that powder cocaine offenses are not covered under the First Step Act. *See, e.g.*, *Luna*, 436 F. Supp. 3d at 482

("The Fair Sentencing Act did not modify the penalties for a crime involving five kilograms of powder cocaine, however, and powder cocaine offenses are therefore not 'covered offenses' for purposes of the First Step Act."). The district court opinions that Ramos-Romero cites each involve crack cocaine offenses, and thus do not support his position. *See Pierre*, 372 F. Supp. 3d at 20 ("Pierre was indicted on possession with intent to distribute five grams or more of cocaine base"); *United States v. Rodríguez-Rodríguez*, 686 F. Supp. 3d 58, 60 (D.P.R. 2023) ("[T]he evidence presented at trial established that the drug trafficking organization of which Rodríguez was determined to be a leader distributed not less than . . . 136.6 kilograms of crack cocaine") (internal quotation marks omitted).

Since Ramos-Romero's offense is not covered by the First Step Act, his motion for reduced sentence should be denied.

**B.  Section 3553(a) Factors**

In addition to Ramos-Romero's lack of a covered offense, I find that the Section 3553(a) sentencing factors weigh against reducing his sentence. The Section 3553(a) factors cover a broad variety of considerations, including the nature and circumstances of the offense, the defendant's personal history, the guideline sentencing ranges, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a). Section 3553(a) also specifies that the sentence imposed should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes by the same defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id*. In the context of a sentence reduction, the amount of time already served and the time remaining are both relevant considerations. *See, e.g.*, *United*

*States v. Nuzzolilo*, 517 F. Supp. 3d 40 at 44 (D. Mass. 2021) (time served and remaining "very significant" when weighing the Section 3553(a) sentencing factors).

Some factors weigh in favor of reducing Ramos-Romero's sentence. As he argues in his motion, his guideline sentencing range would be substantially lower if he were sentenced today since he would not have received a career offender enhancement. "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Ramos-Romero claims that his prior robbery convictions no longer qualify as "crimes of violence" under U.S.S.G. § 4B1.2(a) and that his 1991 cocaine conviction no longer qualifies as a "controlled substance offense" under U.S.S.G. § 4B1.2(b). Dkt. 1729 at 5-6. Courts have found that convictions under the Puerto Rico robbery statute do not qualify as crimes of violence under U.S.S.G. § 4B1.2(a)(2). *See United States v. Borges-Soto*, Crim. No. 18-234 (JAG), 2019 U.S. Dist. LEXIS 237529, at *5-6 (D.P.R. May 10, 2019) ("[T]he Puerto Rico robbery statute criminalizes conduct not covered by the generic definition of robbery. Thus, the Court holds that Defendant's prior robbery conviction does not qualify as a crime of violence under 4B1.2(a)(2)."). Similarly, Ramos-Romero's 1991 drug conviction under Article 404 of the Puerto Rico Controlled Substances Law no longer qualifies as a "controlled substance offense" under U.S.S.G. § 4B1.2(b). *See* Dkt. 492 at 7; *United States v. Martínez Benítez*, 914 F.3d 1, 8-9 (1st Cir. 2019) ("Article 404 is not a 'controlled substance offense' for guidelines purposes."). Thus, since Ramos-Romero would not have received a career offender enhancement under U.S.S.G. § 4B1.1 if sentenced today,

he would be subject to a lower guideline sentencing range. This cuts in his favor when balancing the Section 3553(a) factors.

Several other factors weigh in Ramos-Romero's favor. He has already served over half of his sentence – he has been imprisoned for over 21 years, out of a total sentence of just over 35 years. *See supra* p. 2. His rehabilitation efforts during that time are commendable, along with the lack of recent disciplinary actions against him. *See* Dkt. 1729 at 7; 1729-1 at 2. However, other factors weigh against him. He was convicted of a serious crime for his role in a drug conspiracy trafficking large quantities of narcotics. *See supra* p. 1-2. As an enforcer, he brandished firearms to protect the interests of the conspiracy. *Id*. He has multiple prior convictions for robbery, attempted robbery, and controlled substances. *Id*. And while he argues that his sentence was disproportionately severe compared to his co-defendants, he has not persuasively advanced this argument. For example, his co-defendant Angel Sanjurjo-Figueroa received a 120-month sentence, but also had a significantly lower offense level (29) and criminal history score (category III). *See* Crim. No. 3-cr-55-2, Dkt. 521 at 27:24-28:4.

On the whole, I find that the Section 3553(a) factors weigh against reducing Ramos-Romero's sentence. His criminal history prior to his current conviction is extensive and significant, which weighs heavily against him in evaluating his risk of recidivism. He has not presented a post-release plan of employment or domicile and does not claim that he would receive support from family members. I recognize and sympathize with his observations about the likelihood of receiving a shorter sentence if he would have been sentenced today, but ultimately conclude that this factor and the others in his favor do not tip the balance.

## CONCLUSION

For the foregoing reasons, I recommend that the court **DENY** Ramos-Romero's motion for reduced sentence.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within two weeks of the date of this order. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 25th day of February 2025.

s/ *Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge